UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHANEE MARIE HAIRSTON,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 18-cv-02809-RS

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION**

## I. INTRODUCTION

Plaintiff Marie Hairston appeals the decision of the Commissioner of Social Security denying her application for disability and supplemental security income disability benefits (SSI) pursuant to 42 U.S.C. § 1381a and 1382c(a)(3)(A). An Administrative Law Judge ("ALJ") reviewed Hairston's application and determined she was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment, Hairston's motion will be denied, defendant's motion granted, and the administrative ruling upheld.

## II. BACKGROUND[1]

Plaintiff Hairston is a twenty-nine-year-old woman with a "limited education." She completed ninth grade and certain additional special education classes. Her mental impairments

---

[1] This synopsis is based on the certified administrative record ("AR").

include post-traumatic stress disorder (PTSD), bipolar disorder, anti-social personality disorder, intermittent explosive disorder, and anxiety disorder. In May 2014, Hairston filed an application for disability benefits and shortly thereafter applied for SSI under Title XVI of the Social Security Act. She alleged her disability began on April 1, 2002. The ALJ held a hearing on Hairston's application in October of 2016, at which Hairston and a vocational expert ("VE") testified.

Based on hypotheticals provided at the hearing, the VE opined an individual of Hairston's same age, education and with no past relevant work experience, who can perform work at all exertional levels but is limited to simple, routine, tasks with no public contact, and only superficial interaction with co-workers and supervisors, no collaboration, and few changes in work routine, is still able to work.[2] The ALJ issued a decision denying Hairston's disability and SSI claims in April of 2017. The written decision addressed medical opinions from both Hairston's treating psychiatrists, Dr. Forman and Dr. Tsang, and the state agency medical consultant. After the Appeals Council declined to review the decision, she timely filed this challenge to the administrative decision.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all the facts. *Drouin v. Sullivan*, 966 F.2d 1255,

---

[2] Under a different hypothetical, the VE opined no jobs would be available to a person who might be "off task" at least twenty percent of the workday or week. Hairston contends that if the evidence of her limitations were evaluated correctly, she would fall into that category.

1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id.* at 1258. Despite this, a district court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). A district court errs when it "affirm[s] the ALJ's credibility decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F. 3d at 1019 (internal quotation marks and citation omitted).

## IV. DISCUSSION

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as *a priori* disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see* 20 C.F.R. § 404.1520(a)(4)(v). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity

("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), describing the five-step process).

Applying this five-step inquiry, the ALJ in this action first determined that Hairston had not engaged in substantial gainful activity since filing her application for benefits. At step two, the ALJ found that Hairston suffered from post-traumatic stress disorder (PTSD), bipolar disorder, anti-social personality disorder, intermittent explosive disorder, and anxiety disorder. At step three, however, the ALJ reviewed the medical reports and ruled that Hairston's ailments were not equivalent in severity to any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also determined that Hairston had the RFC to perform "a full range of work at all exertional levels," but with the non-exertional limitations to simple, repetitive tasks and preclusion from public contact. The ALJ found that while Hairston can superficially engage in contact with supervisors and coworkers she is unable to perform collaborative type work and can tolerate few changes in a work setting.

At step four, the ALJ determined Hairston had no past relevant work. At step five, the ALJ concluded that based on Hairston's age, education, work experience, and RFC, there were jobs in the national economy Hairston could perform, and she, therefore, was not disabled.

Hairston contends the ALJ incorrectly determined at step five that Plaintiff is not disabled. Hairston argues this resulted from the ALJ's "legally invalid" analysis of Plaintiff's residual functional capacity between step three and four, in which the ALJ "failed to incorporate limitations assessed by Drs. Forman and Tsang, and . . . failed to include limitations established by Ms. Hairston's credible testimony as well as limitations the ALJ, herself, found in concentration, persistence, or pace." Accordingly, Hairston argues, "the ALJ's rejection of Dr. Forman's opinions and Dr. Tsang's opinions is not supported by substantial evidence or based on correct legal standards" and the ALJ failed to give clear and convincing reasons to reject Hairston's testimony. Hairston concludes, therefore, "the VE's testimony based on the deficient RFC/vocational hypothetical is not substantial evidence to support the ALJ's decision" and "when

the improperly rejected evidence is credited, Ms. Hairston cannot perform any of the jobs the ALJ found she could" and "is disabled because she cannot sustain the demands of work on a regular and continuing basis."

An ALJ "may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Congress directs that, "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require," 42 U.S.C. § 423(d)(5)(A), and that the Commissioner's findings must be upheld if supported by substantial evidence, 42 U.S.C. § 405(g). Congress gave the Commissioner "full power and authority" to make "rules and regulations" necessary to carry out the disability program including determining "the nature and extent of the proofs and evidence" required to establish a right to benefits. 42 U.S.C. § 405(a). Pursuant to this authority, the Commissioner directs that an ALJ may elect not to give controlling weight to a treating physician's medical opinion unless it is well-supported and consistent with other substantial evidence in the record. See 20 C.F.R. § 416.927(c)(2) ("If we find that a treating source's opinion . . . is well-supported . . . and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"). The Commissioner further directs that an ALJ "will always give good reasons" in the decision for the weight given to a treating source's opinion. 20 C.F.R. § 416.927(c)(2).[3]

In September of 2014, Jennifer Forman, Ph.D., examined Hairston as part of her application for benefits. Hairston reported that she spent her day watching television, listening to music, and going to the park. She also could perform activities of daily living. Upon examination, Hairston was cooperative, calm, fully oriented, and mildly anxious and depressed. Plaintiff exhibited fair concentration, fair to good memory, fair insight, and a mildly tangential thought

---

[3] Defendant preserves for the record its position that the ALJ's determination should be reviewed under a deferential substantial evidence standard, but acknowledges that existing controlling precedent in this circuit requires an ALJ to articulate "clear and convincing reasons" to discredit an uncontradicted medical source's opinion.

process. After the examination, Dr. Forman assigned Hairston a Global Assessment of Functioning (GAF) score of 51, indicating moderate symptoms. Dr. Forman opined that Hairston could follow simple and complex instructions, had an unimpaired ability to maintain concentration to perform simple tasks, and had a mildly impaired ability to maintain concentration to perform complex tasks. Dr. Forman further opined that Hairston had moderate limitations on her abilities to withstand the stress of an 8-hour workday, interact with others, and adapt to changes in the workplace setting. Ultimately, Dr. Forman concluded that Hairston could work between three and six hours per day.

In July of 2015, Lesley Tsang, M.D., filled out a questionnaire regarding Hairston's limitations. Dr. Tsang opined Hairston had severe limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Tsang concluded Hairston could not remember or carry out simple instructions.

The ALJ's decision to give the opinions of Dr. Tsang and Dr. Forman only partial credit is not reversible error. The ALJ discounted those opinions in part as inconsistent with the longitudinal medical record. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that.") The limited and conservative treatment of Hairston's mental health impairments also do not support the limitations in Dr. Tsang's opinion or Dr. Forman's limitation to part-time work. In May of 2014, Hairston initiated mental health treatment. She was assessed with a GAF score of 60, denoting moderate symptoms, one point over the mild range. An examination a month later was largely unremarkable. While Hairston's symptoms had worsened, she was assessed with a GAF score of 55, still in the moderate range.

In August of 2014, Hairston reported that she jogged every morning for 30 minutes. She took her children to church and participated in Sunday school. Her mental status examination was within normal limits, and she stated she felt calmer on her medication. In October of that year, Hairston reported that she felt "ok" and "less anxious." She denied being tired all of the time, and

reported that her level of motivation was good. Again, a mental examination was largely unremarkable.

In March of 2015, Hairston denied taking any psychotropic medications. A mental status examination performed by Dr. Tsang was unremarkable except that Hairston's affect was restricted and blunted. She did not return until two months later, when she disclosed she was not compliant with her medications. She reported an increase in her symptoms.

In July 2015, Hairston was properly oriented and exhibited normal mood, affect, judgment and insight. Following a telephone call later that month, Dr. Tsang noted Hairston was anxious but not in distress.

In April of 2016, Hairston reported that she was not compliant with her medication and she experienced anxiety that kept her up until two or three in the morning. In July of that year, Dr. Tsang suggested adjusting her medication. In September, Hairston reported that she did not take her medication consistently. A mental status examination was unremarkable, except that Hairston's affect was again restricted and blunted. Thus, even though Hairston was not compliant with treatment, Dr. Tsang's notes indicate she remained unconcerned and continued the course of conservative treatment. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician who prescribed conservative treatment).

The ALJ did not err in concluding a limitation to simple, repetitive tasks, rather than a limitation to part-time work, was more consistent with findings of moderate limitations. The record included evidence that Hairston could perform activities of independent living. She herself stated she had some capacity to work. She prepared simple meals and performed household chores. She also watched television, listened to music, and read every day. She also worked an eight-hour workday three times a week, and participated in a job-training program.

Hairston also worked at a department store during the relevant period and worked as a temporary employee. While she did not retain those positions for extended periods, she contended kidney infections and herpes prevented her from doing so. Hairston passed the written portion of her test and acquired a driver's license during the relevant period

CASE NO. 18-cv-02809-RS
7

The opinions of Dr. Tsang and Dr. Forman also conflicted with the opinion of the psychological consultant, Pamela Hawkins, Ph.D.. Dr. Hawkins reviewed the record and opined that Hairston had no more than moderate limitations caused by her mental impairments and was capable of performing simple unskilled work with no contact. See 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). In light of the record, the ALJ articulated sufficiently clear and convincing reasons for discounting in part the opinions of Dr. Tsang and Dr. Forman.

Finally, the ALJ did not err in assessing Hairston's subjective account of her symptoms, which were found not fully reliable. Congress expressly prohibits granting disability benefits based on a claimant's subjective complaints. See 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability"); 20 C.F.R. § 416.929(a) (an ALJ will consider all of a claimant's statements about symptoms including pain, but statements about pain or other symptoms "will not alone establish" claimant's disability). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bo*wen, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ's assessment of a claimant's subjective statements must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective testimony. *Thomas*, 278 F.3d at 958; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). Because the record in this case includes evidence to support the weight given to Hairston's testimony, the court "may not engage in second-guessing." *Id.* at 959.

## V. CONCLUSION

Defendant's motion for summary judgment is granted, and plaintiff's motion is denied. A separate judgment will enter.

**IT IS SO ORDERED**.

Dated: August 5, 2019

RICHARD SEEBORG
United States District Judge